**Affirmed and Majority and Dissenting Opinions filed August 30, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00530-CR
_____

**JOHN MATTHEW CONE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1282374**

## DISSENTING OPINION

I respectfully dissent.

The majority opinion assumes without deciding that the trial court erred in admitting, over appellant's objection, the lab report and testimony regarding appellant's blood alcohol concentration (BAC). The majority opinion recognizes constitutional error is involved and that we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a).

In my opinion, there is at least a reasonable possibility that the improperly admitted BAC evidence was a contributing factor in the jury's deliberations in arriving at their verdict; therefore we should reverse and remand. *See Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007).

The issue for the jury to decide was whether, by reason of his intoxication, appellant caused the death of the driver of the Mitsubishi Gallant, the third vehicle that was hit by appellant's truck.

### Non-BAC Evidence

At trial, appellant challenged whether he was legally intoxicated, and he presented evidence that the cause of the accident was a catastrophic failure of a ball joint attached to his left front wheel that, at first, caused the wheel to lean so the truck would not drive straight, and then ultimately caused the wheel to separate and fold under appellant's truck.[1]

The non-BAC evidence shows that, at the time of the accident, appellant was 35 years old, approximately six feet four inches (6' 4") tall, and weighed approximately 240 pounds. Just prior to the accident, appellant had eaten dinner at a Mexican restaurant with a female companion. Along with two dinners, the couple ordered four 20-ounce "Cadillac Ritas," each with extra tequila or liqueur.[2] About fifteen minutes after appellant left the restaurant, he was involved in the subject accident.

Just prior to the accident, appellant's truck slowly drifted twice toward the right shoulder of the road, and then it drifted to the left, and then crossed the center line and collided with the oncoming Yukon. The driver of the vehicle that had been following behind appellant before the collision testified that, although appellant's truck drifted, he

---

[1] Appellant was driving a pickup truck with a ten-inch lift kit, extra-large tires, and "bad" ball joints that were observed three weeks earlier during a wheel alignment.

[2] Excluding the testimony of the toxicologist based on the BAC test, there is no evidence that appellant consumed any other alcoholic beverage that day.

2

was not driving like an intoxicated driver.   There was evidence that, with a weak ball joint, a leaning tire will not drive straight.

According to the medical records of appellant's condition after the accident, appellant lost consciousness; he suffered blood loss; he had to be extracted from his truck by the Jaws of Life; he was life-flighted to the hospital; his right eyebrow and eyelid were lacerated and his right eye was swollen shut; at the emergency center he was diagnosed as having a closed head injury, facial contusions, and a right frontal sinus fracture with adjacent soft tissue swelling and hematoma.

At the scene of the accident, appellant complained of pain in his head and chest; he screamed that he could not breathe.   He was combative.   There was a smell of alcohol on his breath.

At the hospital, appellant continued to be agitated; he was given sedatives.[3]

The jury was charged with determining, beyond a reasonable doubt, whether appellant's intoxication was the cause of the accident.

The evidence relating to whether appellant was legally intoxicated was conflicting and inconclusive.   Appellant, having dinner with a companion, paid for dinner and drinks, which included four large alcoholic beverages, which may have been split between the two diners,[4] and there was no evidence that appellant had any other alcoholic beverage that day.   Appellant is a big man, 6' 4" tall, weighing 240 pounds.   Although appellant messily added an "e" to his signature on the restaurant receipt, he added an appropriate tip and properly calculated his bill total.   Appellant's truck slowly drifted right and left as he drove: the cause may have been his consumption of alcohol at the restaurant, but the driver behind him noted that appellant was not driving as though he was intoxicated, and expert

---

[3] The medical records disclose that appellant was given a sedative at 12:05 a.m.; at 12:45 a.m. a doctor notes that appellant is "obviously intoxicated," "incoherent."

[4] The manager of the Mexican food restaurant testified they impose a two-drink limit for those drinks.

3

evidence indicated that a weak ball joint caused the left tire to lean which affected getting the tire to drive straight. After a horrendous accident, pinning appellant in his truck, knocking him out, injuring his head and chest, affecting his ability to breathe, appellant, who had a smell of alcohol on his breath, resisted medical assistance and was combative: perhaps appellant's behavior was an understandable reaction of a big man in pain who "could not breathe," or perhaps appellant was legally intoxicated from the restaurant drinks. There were medical records that stated opinions based on observations of the smell of alcohol on appellant's breath, his combativeness, and slurred speech perhaps following the administration of sedatives; there were no results from a field sobriety test, breathalyzer test, or blood alcohol test for the jury to consider (excluding the improperly admitted BAC evidence).

Based on the conflicting and non-conclusive evidence, the jury, the trier of fact and sole judge of the weight and credibility of the evidence, could have reasonably gone either way. In my opinion, a reasonable juror could have concluded that, although appellant had some drinks with dinner before the accident, those drinks were not likely to cause a big man like appellant to be so intoxicated that he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol, and therefore other factors must have been at play in causing the accident. On the other hand, as the trier of fact and the sole judge of the weight and credibility of the evidence, a reasonable juror could have concluded that appellant's pre- and post-accident behavior proved that he was highly intoxicated, discounting other explanations and opinions.

In determining whether the constitutional error of admitting the BAC lab results and testimony into evidence was harmful error, we are not simply to decide whether the jury verdict enjoys evidentiary support. *See Scott*, 277 S.W.3d at 690. Instead, we consider the likelihood that the constitutional error was "actually a contributing factor in the jury's deliberations in arriving at a verdict." *Id.* Thus, a constitutional error does not require reversal unless there is a "reasonable possibility" that, within the context of the entire trial,

4

the perceived error "moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Id.*

## BAC Evidence

Assuming the BAC evidence should have been excluded, the jury should not have received the following evidence and arguments:

At 11:12 p.m., approximately two hours after the accident, appellant had a blood alcohol concentration of .19 grams per 100 milliliters of blood (the legal limit being .08 grams);

It would have taken the consumption of 14 standard-size drinks by appellant to get to the .19 number at the time of the blood draw;

At the time of the accident at 9 p.m., appellant had an estimated BAC of .20-.21, 2 ½ times the legal limit.

During closing arguments at the guilt/innocence phase, the State referred to the blood alcohol test machine as the "gold standard," and argued "there is no doubt about the blood." During closing arguments at the punishment phase, the State stressed that appellant was driving with a BAC that was 2 ½ times the legal limit.

With the BAC evidence, the jury had concrete, objective blood test results and analyses. In my opinion, there is at least a "reasonable possibility" that the BAC evidence moved the jury from a state of non-persuasion to a state of persuasion with respect to the amount of alcohol appellant had consumed, the extent of his intoxication, and the cause of the accident, and thus contributed to the jury's verdict. Therefore, I cannot say, beyond a reasonable doubt, that the BAC evidence did not contribute to appellant's conviction and punishment.

5

Accordingly, I would hold that, assuming it was error for the trial court to admit the BAC evidence, such constitutional error was not harmless and is reversible.


/s/               Margaret Garner Mirabal
                       Senior Justice


Panel consists of Justices Frost, McCally, and Mirabal.[5] (McCally, J. Majority)

Publish — TEX. R. APP. P. 47.2(b).

---

[5] Senior Justice Margaret Garner Mirabal sitting by assignment.